UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARRETT ROSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-02534-GCS |
| | ) |
| STATE OF ILLINOIS, ILLINOIS | ) |
| DEPARTMENT OF CENTRAL | ) |
| MANAGEMENT SERVICES, AND | ) |
| ANTHONY PASCENTE | ) |
| Defendants. | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

This matter comes before the Court upon Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants filed their Motion to Dismiss along with a Memorandum of Support on December 14, 2022. (Doc. 22, 23). Plaintiff filed a Response in Opposition on February 24, 2023. (Doc. 32). Having reviewed Defendants' Motion and Plaintiff's Response, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (Doc. 22).

INTRODUCTION AND BACKGROUND

Plaintiff, Garrett Rose, resides in the City of Salem, Illinois, and currently works for the Central City, Illinois, Police Department. (Doc. 1, p. 2). He was previously employed by the State of Illinois as a Correctional Officer with the Illinois Department of Corrections ("IDOC") from February of 2017 to June 9, 2022, and was terminated for failing to wear a mask. *Id.* On September 22, 2022, Plaintiff received a letter from the

Illinois Department of Central Management Services ("CMS") that claimed that Plaintiff owed the State $1,195.92, as reimbursement for the payment of medical and dental insurance premiums which were not withheld from Plaintiff's paychecks from March 16, 2022, through May 31, 2022. (Doc. 1, Exh. 2, p. 1). In relevant part, the letter states the following:

> The underpayment occurred when Group Insurance Premiums were not deducted correctly from your payroll . . . .
>
> **This letter is to serve as notice of intent to exercise our right under the State Comptroller Act (15ILCS405/10/05) to collect delinquent Group Insurance Premium through involuntary withholding.** Unless CMS receives your payment by October 25, 2022, the Illinois Office of the Comptroller *will be notified to begin involuntary* withholding.

*Id.* (emphasis added).

On October 31, 2022, Plaintiff filed his Complaint against Defendants, the State of Illinois, CMS, and Anthony Pascente, pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, and 28 U.S.C. § 2201(a), requesting that the Court declare that "Plaintiff has a constitutionally protected property interest in his wages" and that Defendants may not cause any portion of Plaintiff's wages to be held without notice and hearing. (Doc. 1, p. 4). As relief, Plaintiff seeks a declaratory judgment, an award of attorney fees, and injunctive relief. *Id.*

LEGAL STANDARDS

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive dismissal, Plaintiff must state a claim that is 'plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim exists "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the plaintiff's allegations of fact must rise above a speculative level in order to constitute a "showing" that makes the claims in a complaint rise to the level of plausibility. *Bell Atlantic Corp.*, 550 U.S. at 555 (internal citations omitted).

The Court will accept all well-pleaded factual allegations as true and will construe all reasonable inferences in Plaintiff's favor. *See Gibson*, 910 F.2d at 1520-21; *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020). "Well-pleaded facts," however, include neither legal conclusions nor unsupported conclusions of fact. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) (internal citations omitted). *See also Iqbal*, 556 U.S. at 679 (stating the Court is not required to accept the allegations of "a plaintiff armed with nothing more than conclusions."); *Zablocki*, 968 F.3d at 623 (noting that the Court need not accept statements of law or unsupported conclusory factual allegations as true). Finally, when a plaintiff "relies on a document attached to the complaint, and does not deny its accuracy, the facts communicated by that document control over allegations to the contrary." *Zablocki*, 968 F.3d at 623.

## DISCUSSION

Defendants submit three arguments in support of their Motion to Dismiss. First, Defendants assert that Plaintiff's claims against CMS and the State of Illinois are barred by the Eleventh Amendment. (Doc. 23, p. 2-4). Second, Defendants assert that they are not "persons" amenable to suit under § 1983. *Id.* at p. 4-5. Lastly, Defendants claim that Plaintiff has failed to state a claim for a Due Process violation. *Id.* at p. 6-8. In response,

Plaintiff argues that the *Ex Parte Young* doctrine saves his claim for injunctive relief against Defendant Pascente. He further claims that he has a valid property interest in the wages threatened to be withheld by CMS, which entitle him to notice and hearing before those wages are withheld. (Doc. 32, p. 1-4). Ultimately, the Court agrees with Defendants that sovereign immunity bars Plaintiff's claims against the State of Illinois and CMS. However, the Court agrees with Plaintiff that he may proceed against Defendant Pascente for injunctive relief in accordance with the *Ex Parte Young* doctrine and that he has facially stated a valid due process claim. As such, the Court **GRANTS IN PART** and **DENIES IN PART**, Defendants' Motion to Dismiss.

A. **Whether Eleventh Amendment Sovereign Immunity Bars Plaintiff's Claims against Defendants the State of Illinois, CMS, and Pascente**

The Court turns first to the arguments concerning sovereign immunity. The Eleventh Amendment recognizes that each state is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). While the Eleventh Amendment literally applies to bar suits against a State by citizens of another State, it has long been held that it also bar suits against a State by its own citizens. *Id.* at p. 10. Thus, the Eleventh Amendment provides sovereign immunity to the States, limiting the ability of citizens to sue States in federal court. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). However, the Eleventh Amendment does not apply: (1) where Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power; (2) where a State has waived its immunity and consent to the

suit; and (3) where the suit is one against a state official for prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123 (1908), *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). Accordingly, for Plaintiff's claim to succeed against each of the Defendants, one of the aforementioned exceptions must apply. Because the Court is unable to find an exception applicable to Defendants CMS and the State of Illinois, Plaintiff's claims against these two Defendants must be dismissed.

Plaintiff's claims against the State of Illinois, CMS, and Anthony Pascente (Director of CMS) were brought pursuant to 42. U.S.C. § 1983. The Seventh Circuit has noted that the United States Supreme Court rejected the proposition that sovereign immunity of states was abrogated for Section 1983 cases. *See Owen v. Lash*, 682 F.2d 648, 654 (7th Cir. 1982). Congress in passing Section 1983 "had no intention to disturb the States' Eleventh Amendment immunity." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Thus, there is no Congressional intent present to indicate that Congress has waived the sovereign immunity of the State Illinois.

Additionally, there is no indication that the State of Illinois itself has waived its immunity and consented to the suit by Plaintiff. Waiver of sovereign immunity by a state must be unequivocal. *See MCI Telecommunications Corp v. Illinois Bell Telephone Co.*, 222 F.3d 323, 338 (7th Cir. 2000). While the State of Illinois has waived its Eleventh Amendment immunity to some causes of action, the waiver is limited and does not extend to Plaintiff's claims. *See, e.g.*, 745 ILL. COMP. STAT. § 5/1.5 (noting that the State of Illinois has waived its sovereign immunity for violations of the Age Discrimination in Employment Act of 1967, the Fair Labor Standards Act of 1938, the Family Medical Leave

Act, the American with Disabilities Act of 1990, and Title VII of the Civil Rights Act of 1964). Therefore, the Court is unable to find that the State of Illinois itself has consented to suit. As a result, Plaintiff's claims against CMS and the State of Illinois must be dismissed.

However, the third exception noted above applies to Defendant Pascente and saves Plaintiff's claim. The United States Supreme Court has recognized that actions against state officials in their official capacities for prospective injunctive relief to stop an ongoing civil rights violation do not offend the Eleventh Amendment. *See Ex Parte Young*, 209 U.S. 123 (1908). The rationale behind this exception is that when an official violates federal law, the official acts outside the scope of its authority and is no longer entitled to immunity. *See Ameritech Corp. v. McCann*, 297 F. 3d 582, 586 (7th Cir. 2002) (citing *Dean Foods Co., v. Brancel*, 187 F.3d 609, 613 (7th Cir 1999)). This allows federal courts to vindicate federal rights while holding state officials accountable for unlawful actions *Id.* (citing *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 345 (7th Cir. 2000)). In his Response to Defendants' Motion to Dismiss, Plaintiff indicates that "[h]e seeks injunctive relief to protect his wages." (Doc. 32, p. 1). This is an appropriate form of relief to pursue against Defendant Pascente. Therefore, Plaintiff's claim against Defendant Pascente in his official capacity for prospective injunctive relief may proceed.

**B.    Whether Defendants are "Persons" Amenable to Suit under Section 1983**

Defendants next argue that the Defendants are not "persons" amenable to suit under § 1983. (Doc. 23, p. 4). As the Court has already determined that Plaintiff's claims against CMS and the State of Illinois are barred by Eleventh Amendment sovereign

immunity, the Court will only consider Defendants' argument in relation to Defendant Pascente. The primary argument Defendants raise regarding Pascente is that Plaintiff has not "provided any allegations of [his] personal involvement" in Plaintiff's alleged constitutional deprivation. (Doc. 23, p. 5). Plaintiff responded to Defendants' argument by citing authority suggesting that Defendant Pascente's lack of personal involvement is irrelevant given that Plaintiff is only seeking prospective injunctive relief. (Doc. 32, p. 2). The Court agrees with Plaintiff that Pascente's personal involvement is irrelevant.

As a preliminary matter, the Court wishes to clarify the scope of "persons" amenable to suit under § 1983. Defendants cite to *Will v. Michigan Dept. of State Police*, as authority to suggest that neither a State nor a State official acting in his or her official capacity is a "person" subject to suit under section 1983. 491 U.S. 58, 71 (1989). However, Justice White clarified in the majority opinion that state officials acting in their official capacity, when sued for injunctive relief, would qualify as persons under section 1983. *Id.* at n.10. Justice White reasoned that this is because "official capacity actions for prospective relief are not treated as actions against the State." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Thus, Pascente qualifies as a "person" amenable to suit under section 1983.

Defendants also argue that Plaintiff is required to demonstrate that Pascente was personally involved in Plaintiff's constitutional deprivation for his claim to proceed. Defendants believe that it is "well settled that 'individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation.'" (Doc. 23, p. 5) (citing *Minix v. Canarecci*, 597 F.3d 824, 933 (7th Cir. 2010) (quoting *Palmer v. Marion Cty.*, 327 F.3d

588, 594 (7th Cir. 2003)). Plaintiff however, notes that the Seventh Circuit "has declined to apply the personal involvement doctrine for cases where only injunctive relief is being sought." (Doc. 32, p. 2) (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)). On this point, the Court agrees with Plaintiff's analysis of existing Seventh Circuit precedent.

In *Gonzalez v. Feinerman*, inmate Angel Gonzalez filed a § 1983 lawsuit claiming that two prison physicians and the warden at Menard Correctional Center failed to provide adequate care for a hernia. 663 F.3d 311, 312 (7th Cir. 2011). Initially, Gonzalez's claim against the warden was dismissed because the District Court held that the warden "was not personally involved in Gonzalez's medical care and thus could not be liable to him." *Id.* at p. 313. However, the Seventh Circuit reversed the District Court's holding, noting that "the warden of Menard [was] a proper defendant since Gonzalez [sought] injunctive relief." *Id.* at p. 315. Similarly, here, Plaintiff seeks injunctive relief regarding his wages, and Defendant Pascente as the Director of CMS is the appropriate person to effectuate such injunctive relief. Therefore, allegations of Defendant Pascente's personal involvement are not required.

C.    **Whether Plaintiff States a Claim for a Due Process Violation**

Defendants believe that Plaintiff has failed to state a due process claim because "Plaintiff has [made] no claim that CMS has undertaken actions to garnish wages or initiate involuntary withholding" of his wages. (Doc. 23, p. 8). In support of this argument, Defendants note that the "Illinois Comptroller Act provides that before any of Plaintiff's wages can be deducted or withheld, CMS would have to provide the Comptroller with notification that the debt is established through notice and opportunity

to be heard." *Id.* Plaintiff, in turn, believes CMS has undertaken actions to initiate the involuntary withholding of his wages and that the existence of a state statute providing for notice and opportunity to be heard does not preclude a due process violation. (Doc. 32, p. 4). Ultimately, based on the allegations in the Complaint and the reasonable inferences that must be afforded to Plaintiff at this stage of the proceedings, the Court is unable to grant Defendants' Motion to Dismiss.

The Due Process clause of the Fourteenth Amendment forbids a State from depriving "any person of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV, § 1. This Constitutional guarantee encompasses not only substanstive rights, but procedural ones as well. The requirement of "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldrige*, 424 U.S. 319, 332 (1976). The Supreme Court has "consistently held that some form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333.

In their Motion to Dismiss, Defendants rely on 15 ILL. COMP. STAT. § 405/10.05[1] and the accompanying Illinois State regulations[2] that lay out the procedures through

---

[1] In relevant part, the statute provides:

> [T]he Comptroller, upon notification thereof, shall ascertain the amount due and payable to the State . . . and draw a warrant on the treasury or on other funds held by the State Treasurer, stating the amount for which the party was entitled to a warrant or other payment, the amount deducted therefrom, and on what account, and directing the payment of the balance; which warrant or payment as so drawn shall be entered on the books of the Treasurer, and such balance only shall be paid. The Comptroller may deduct any one or more of the following: (i) the entire amount due and payable to the State or a portion of the amount due and payable to the State in accordance with the request of the notifying agency; (ii) the entire amount due and payable to the United States or a portion of the amount due and payable to the United States in accordance with a reciprocal offset agreement under subsection (i-1) of Section 10 of the Illinois State Collection Act of 1986; or (iii) the entire amount due and payable to the unit of local government, school district, public institution of higher education, or clerk of the circuit court, or a portion of the amount due and payable to that entity, in accordance with an intergovernmental agreement authorized under this Section and Section 10.05d No request from a notifying agency . . . for an amount to be deducted under this Section from a wage or salary payment, from a contractual payment to an individual for personal services, or from pension annuity payments made under the Illinois Pension Code shall exceed 25% of the net amount of such payment. "Net amount" means that part of the earnings of an individual remaining after deduction of any amounts required by law to be withheld. . . . Whenever the Comptroller draws a warrant or makes a payment involving a deduction ordered under this Section, the Comptroller shall notify the payee and the State agency that submitted the voucher of the reason for the deduction and he or she shall retain a record of such statement in his or her records.

15 ILL. COMP. STAT. § 405/10.05.

[2] The applicable corresponding State regulations found in the Illinois Administrative Code provide:

> b) The Comptroller will not process a claim under Section 10.05 of the Act until the Comptroller has received a statement of notification from the State agency that the debt has been established through notice and opportunity to be heard.
>
> c) For purposes of Section 10.05 of the Act and this Part, "statement of notification" of an account or claim eligible to be offset shall be deemed to occur when the State agency in favor of which the account or claim has arisen has submitted to the Comptroller the following information:

which a withholding of Plaintiff's wages could proceed to argue that Plaintiff's due process rights have not been violated. Defendants argue that Plaintiff has been provided

---

      1) the name and Social Security Number or Federal Employer's Identification Number of the person against whom the claim exists;

      2) the amount of the claim then due and payable to the State;

      3) the reason why there is an amount due to the State (i.e., income tax liability, overpayment, etc.);

      4) the time period to which the claim is attributable;

      5) the fund to which the debt is owed;

      6) a description of the type of notification given to the person against whom the claim exists and the type of opportunity to be heard afforded that person;

      7) a statement as to the outcome of any hearings or other proceedings held to establish the debt, or a statement that no hearing was requested; and

      8) the date of final determination of the debt.

d) The statement required by subsections (b) and (c) shall be executed by the person or persons who are authorized to issue, certify and approve vouchers for the agency under Sections 10 and 11 of the State Finance Act [30 ILCS 105/10 and 11]. The authority to execute the statement of the claim required by this Section may be delegated to a responsible person or persons. This delegation of authority shall be made on forms provided by the Comptroller and shall contain a signature sample of the persons to whom the delegation is made.

e) A State agency that has submitted a claim for offset must notify the Comptroller as soon as possible, but in no case later than 30 days, after receiving notice of a change in the status of an offset claim. A change in status may occur due to circumstances such as payments received other than through a successful offset, the filing of a bankruptcy petition, or the death of the debtor.

74 Ill. Admin. Code § 285.1102.

with procedural due process because the relevant Illinois regulation specifies that the state agency in its "statement of notification" must provide "a description of the type of notification given to the person against whom the claim exists and the type of opportunity to be heard afforded that person" before wages are withheld.

However, the notification provided to Plaintiff by CMS makes no mention of such a process. The September 22, 2022, letter mailed to Plaintiff indicates that "[t]his letter is to serve as notice of intent to exercise our right under the State Comptroller Act . . . to collect delinquent Group Insurance Premium through involuntary withholding. Unless CMS receives your payment by October 25, 2022, the Illinois Office of the Comptroller *will be notified to begin involuntary withholding.*" (Doc. 1, p. 6) (emphasis added). As Plaintiff noted in his Complaint, this led him to believe that absent payment, he had no other options to contest the scheduled withholding which was set to begin on October 25, 2022. (Doc. 1, p. 3). The letter caused Plaintiff to believe that CMS had everything it needed to initiate the withholding on October 25th with the Illinois Comptroller. Accordingly, the Court finds that Plaintiff's reading contains a reasonable inference that he was denied procedural due process regarding the withholding of his wages.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for failure to state a claim is **GRANTED in PART** and **DENIED in PART**. (Doc. 22). The Motion is **GRANTED** as to Defendants CMS and the State of Illinois. The Motion is **DENIED** as to Defendant Anthony Pascente for the purposes of effectuating any ordered injunctive relief.

**IT IS SO ORDERED.**

**DATED: September 26, 2023.**

Digitally signed by
Judge Sison
Date: 2023.09.26
12:19:52 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**